UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

|   |   |
|---|---|
| DGG GROUP, LLC<br><br>*Plaintiff*,<br><br>vs.<br><br>LOCKHART FINE FOODS, LLC<br><br>*Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION NO. 1:20-cv-00330-RP |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

TO THE HONORABLE DISTRICT COURT JUDGE ROBERT PITMAN:

COMES NOW Plaintiff DGG Group, LLC ("***DGG***") and files this, complaining of and about Defendant Lockhart Fine Foods, LLC and for cause of action show unto the Court the following:

**I. PARTIES**

1. Plaintiff, DGG Group, LLC, is a Texas Limited Liability Company, and has made an appearance in this case through its undersigned attorney of record.

2. Defendant Lockhart Fine Foods, LLC is a Delaware limited liability company, and has made an appearance in this case through its attorney of record.

**II. JURISDICTION AND VENUE**

3. The Court has subject-matter jurisdiction over the lawsuit under 28 U.S.C. § 1332(a) because the suit is between a citizen of a state and subjects of a foreign state, and the amount in controversy exceeds $75,000.00, excluding interest and costs. The Court has personal

jurisdiction over the parties because they have previously submitted and agreed to the personal jurisdiction of the State of Texas and the Western District of Texas, Austin Division, and otherwise conducted sufficient business and other dealings subjecting themselves to this Court's personal jurisdiction. Venue is similarly proper based on the location of the agreement of the parties and the transaction at issue.

### III. BACKGROUND

4.  Plaintiff was previously engaged in the manufacture of cookies and cookie dough for wholesale and retail sale. Defendant is an entity created for the sole purpose of purchasing all of the assets of Plaintiff for the express purpose of taking on Plaintiff's cookie business. Plaintiff and Defendant executed that certain *Asset Purchase Agreement* (the "**Agreement**") in which Defendant agreed to buy and Plaintiff agreed to sell certain assets used in the manufacturing, production, and sale of cookies, cookie dough, and other food products. A copy of the Agreement is attached hereto as **Exhibit "A"**. The transaction was consummated, and all of the assets used in Plaintiff's cookie business were sold to Defendant.

5.  Pursuant to the Agreement, Defendant was to make certain payments to Plaintiff in consideration and in exchange for the assets described in the Agreement. Some of these payments, as indicated in the Agreement, were "earn-out" provisions and would be paid to Plaintiff over time. These payments show that the parties contemplated that Defendant would continue to operate a cookie business in order to pay a significant portion of the negotiated consideration pursuant to the Agreement. To date, Defendant has failed and refused to satisfy its obligations under the Agreement.

6.  At the closing of the transaction, Defendant paid a total of $1,051,823.00, which included $869,629.00 as the base purchase price, $170,194.00 for the purchase of Plaintiff's inventory, and $12,000.00 for certain equipment setup services provided by Plaintiff.

7. As part of the transaction, Plaintiff and Defendant negotiated a transition period in which Plaintiff agreed to manufacture products and ship orders to customers on Defendant's behalf. Prior to this transition period, Defendant represented and agreed that it would be responsible for the administrative processing of all orders during the transition period. Further, Defendant reaffirmed this representation during the transition period itself. This representation turned out to be false, and Plaintiff was forced to take on the time and expense of performing such administrative processing.

8. In exchange for Defendant's representation that it would handle the administrative processing for all orders during the transition period, Defendant negotiated a 10% discount on all finished goods produced and sold by Plaintiff during the transition period to be paid by Plaintiff to Defendant as orders were shipped.

9. Defendant did not perform its obligation to take on the administrative processing during the transition period, and further requested to extend the transition period because Defendant's facilities were not ready to run the manufacturing equipment Defendant had purchased in the Agreement. Still, Plaintiff made a payment representing the 10% discount to Defendant on February 15, 2019 in the amount of $7,038.08.

10. Plaintiff reached out to David Leavitt, who is in a senior management position with Defendant, regarding his representation that Defendant would handle the administrative burden during the transition period, but no agreement was reached at that time. As such, Plaintiff retained any additional payments related to the 10% discount off finished products, as Plaintiff was incurring the costs of the administrative processing that Defendant had represented it would bear. This administrative processing ultimately resulted in a cost of no less than $10,771.75 to Plaintiff, which Defendant eventually agreed to pay. However, Defendant never made any such payment.

11. Further, Plaintiff and Defendant had negotiated certain equipment setup costs for

which Defendant had paid $12,000.00 at closing. However, Plaintiff and Defendant agreed that the $12,000.00 was only to cover the labor costs of the equipment setup until March 31, 2019. As agreed, Plaintiff sent personnel to Defendant's facility for the purposes of instructing Defendant's employees on equipment setup and use from March 27, 2019 to March 29, 2019. However, Defendant's facility did not have the electrical infrastructure nor requisite improvements to properly operate the manufacturing equipment or produce a finished product at that time. It was not until April 18, 2019 that the facility was ready. At that time, Plaintiff sent additional personnel to set up the equipment and oversee initial manufacturing to ensure that the manufacturing operations were up and running. For that additional work, Plaintiff submitted invoices totaling $15,179.46. Once again, Defendant represented that it would pay such invoices, but did not do so.

12. On April 5, 2019, Defendant began the administrative processing of Plaintiff's orders. At that time, Plaintiff began, once again, applying the 10% discount rate to the orders because Defendant had finally taken on the cost and burden of administrative processing.

13. By April 12, 2019, Plaintiff had shipped all of its remaining ingredients, packaging, and finished goods to Defendant.  When Defendant began manufacturing finished products on April 18, 2019, Defendant represented to Plaintiff that it was having difficulty acquiring credit for purchasing ingredients and packaging materials from vendors that were needed to produce finished products. As such, Plaintiff agreed to purchase such goods on Defendant's behalf and applied the 10% discount to such purchases, which resulted in a loss to Plaintiff.

14. These amounts incurred during the transition period were ultimately agreed to and reduced to a final "true-up" sum that would cover the whole of the various costs and transactions that occurred during the transition period. Defendant represented to Plaintiff that it would pay Plaintiff a "true-up" sum of $49,481.85 to Plaintiff. This amount remains unpaid.

15. Further, Section 1.4 of the Agreement provides that Defendant shall pay Future

Consideration equal to twenty percent (20%) of the Net Collected Revenue during the 12-month period (which is broken into four, 3-month periods for payment purposes) following the manufacturing of a product in a particular product tier, as well as share relevant sales figures for such time periods to ensure the accuracy of those payments. In other words, Defendant was obligated to share net revenue financial data and pay Plaintiff twenty percent (20%) of Defendant's revenue and represented it would do so. Additionally, Section 1.4(d) of the Agreement requires that Defendant place all Future Consideration in a trust account until the time that it has been delivered to Plaintiff. Despite representations that it would do so, Plaintiff has failed and refused to place the Future Consideration into the trust. This purposeful failure is a violation of Defendant's fiduciary duty to hold such funds in trust.

16.   Currently, there have been no payments made and sales figures are either incomplete or have not been produced by the agreed-upon deadlines. Further, to Plaintiff's knowledge, there has been no Future Consideration placed into a trust account.

17.   Plaintiff did eventually receive sales figures for the first 3-month period, which covered revenue from May 2019 to July 2019, and for which payment was due at the end of August 2019. For this period, Defendant was obligated to pay $282,509.30 into trust on Plaintiff's behalf. Plaintiff has only received partial sales figures from Defendant for the second 3-month period, which covers August 2019 through October 2019. Currently, Plaintiff has sales figures for August 1, 2019 through September 27, 2019. Based on these partial sales records, Defendant owes at least $160,018.70 for the period between August 1, 2019 and September 27, 2019, with the rest of the 3-month period still needing to be calculated from the records Defendant has yet to provide Plaintiff. Plaintiff estimates such amount for the remaining portion to be approximately $125,000.00, but would need access to Defendant's sales records to calculate the precise amount.

18.   Plaintiff seeks damages of no less than $617,009.85 from Defendant. Such figure

is the sum of the $49,481.85 "true-up" payment covering the transition period, the $282,509.30 in future consideration payments for May 2019 to July 2019, the $160,018.70 in future consideration for the period of August 1, 2019 through September 27, 2019, and the estimated $125,000 owed for the period in which Plaintiff is not in possession of the documents and information Defendant is required, but continues to fail and refuse, to provide. Plaintiff reserves the right to adjust its damages once it receives complete sales figures, which Plaintiff also seeks from Defendant.

19. On or about January 17, 2020, Plaintiff sent a demand letter (the "***Demand Letter***") to Defendant notifying Defendant of its claims and demanding Defendant to comply with its obligations under the Agreement. A copy of the Demand Letter is attached hereto as **Exhibit "B"**.

20. Based upon information and belief, at some point thereafter, Defendant apparently sold all or substantially all of the assets it received pursuant to the Agreement. Based upon information and belief, the assets transferred to Defendant from Plaintiff pursuant to the Agreement were sold through one or multiple transactions and are now in the possession of one or more companies that are selling their assets at auction.

21. Plaintiff has since learned that all or substantially all of the equipment transferred to Defendant pursuant to the Agreement is being sold at auction by virtue of an assignment for the benefit of creditors on April 16, 2020. The sale of such assets before the resolution of this litigation would cause irreparable harm, in that the assets consist of substantially all of Defendant's remaining assets, and such assets are being transferred at a time when Defendant still owes Plaintiff hundreds of thousands of dollars.

22. The assets are estimated to be worth between $400,000.00 and $500,000.00. A list of the assets being sold at auction are attached hereto as **Exhibit "C"**, and may further be observed at the following hyperlinks, published to the general public:

    a) https://www.bidspotter.com/en-us/auction-catalogues/timed/rabin/catalogue-id-

rabin10101

b) https://rabin.com/auctions/upcoming/

23. Included as **Exhibit "D"** is a series of pictures of Plaintiff's items that are being sold at auction. Reviewing the hyperlink shown in a) above, it appears that the items that Plaintiff sold to Defendant are being auctioned as lot numbers 701-816, as well as 249 and 311.

24. Further, in the opinion of Plaintiff, which is the former owner of the equipment at auction and therefore are familiar with its value, the prices fetched at auction will be drastically lower than what would be paid on the open market. The current economic climate amongst the COVID-19 global pandemic has created a financial circumstance in which cookie manufacturers generally will not be looking to expand their business or invest in capital. It is Plaintiff's opinion that postponing the sale would be advantageous to all parties involved.

25. All conditions precedent to the filing of this suit have occurred.

### IV. CAUSES OF ACTION

26. <u>Breach of Contract</u>. Plaintiff incorporates by this reference all other paragraphs of this petition as if fully set forth herein. Defendant has breached the terms of the Agreement between Defendant and Plaintiff, to the harm and detriment of Plaintiff, by failing to pay amounts owed under the Agreement. Plaintiff seeks from Defendant all of its actual, direct, indirect, special and consequential damages resulting from said breach, as well as reasonable and necessary attorneys' fees as provided by law.

27. <u>Common Law Fraud</u>. Plaintiff incorporates by this reference all other paragraphs of this petition as if fully set forth herein. Defendant made several material representations to Plaintiff, including that it would take on the task of administrative processing, that it would place Future Consideration into a Trust, that it would pay certain amounts should the need arise, which ultimately resulted in the "true-up" sum that Defendant falsely represented it would pay, as well

as other representations described in the Facts section of this Petition. These representations were false. When the representation was made, Defendant knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion. Defendant made the representations with the intent that Plaintiff should act upon it. Plaintiff acted in reliance on the representation by entering the Agreement and continually making concessions throughout to try to make the transaction successful for both parties. However, Plaintiff thereby suffered injury due to the falsity of Defendant's fraudulent claims.

28. <u>Breach of Fiduciary Duty</u>. Plaintiff incorporates by this reference all other paragraphs of this petition as if fully set forth herein.  Defendant owed fiduciary duties to Plaintiff in relation to the funding and operation of the trust into which the Future Consideration was supposed to be deposited, as well as the production of the information contained in the undisclosed sales records. Defendant breached these duties by refusing to deposit any Future Consideration and refusing to provide sales figures to Plaintiff. Defendant' breached proximately caused injury to Plaintiff and benefit to Defendant in that Plaintiff did not received the payments it is owed and Defendant kept such revenue.

29. <u>Fraudulent Transfer of Property to Defraud Creditors</u>. Plaintiff incorporates by this reference all other paragraphs of this petition as if fully set forth herein. Defendant  transferred substantially all of its assets to at least one other company, with actual intent to hinder, delay, or defraud creditors, in violation of the Texas Uniform Fraudulent Transfer Act (the "***TUFTA***"), which has resulted in damages to Plaintiff, or otherwise resulted in a statutory right of recovery for Plaintiff.

30. Plaintiff seeks a judgment against Defendant, as entitled by law, including: an award of damages; an avoidance of the transfer of assets to the extent necessary to satisfy the debt owed to Plaintiff; an attachment or other provisional remedy against the assets transferred, and/or

the proceeds from the transfer, and/or other property of Defendant; and an award of attorney's fees and costs incurred by Plaintiff in the investigation and prosecution of this claim, as provided by Texas Business & Commerce Code §24.013 .

## V. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendant be cited to appear and answer herein. Following an appropriate hearing on this matter, Plaintiff requests that the Court enter a judgment awarding Plaintiff: 1) economic damages; 2) reasonable and necessary attorneys' fees; 3) prejudgment and post-judgment interests; 4) court costs; and 5) all other relief the court deems appropriate.

Respectfully submitted,

**CAGLE PUGH**

/s/ Adam Pugh
**ADAM PUGH**
State Bar No. 24044341
4301 Westbank Dr., Building A, Suite 150
Austin, Texas 78746
Tel. (737) 261-0600
Fax. (737) 261-0637
adam.pugh@caglepugh.com
***ATTORNEYS FOR PLAINTIFF***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was delivered this 8th day of April 2020 to the following:

Katherine P. Chiarello          Via eService: katherine@wittliffcutter.com
WITTLIFF CUTTER, PLLC
1209 Nueces Street
Austin, Texas 78701

/s/ Adam Pugh
Adam Pugh