UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DGG GROUP, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:20-CV-330-RP |
| | § | |
| LOCKHART FINE FOODS, LLC, | § | |
| | § | |
| Defendant. | § | |

**ORDER**

Before the Court is Plaintiff DGG Group, LLC's ("DGG Group") Motion for Temporary Restraining Order and Preliminary Injunction,[1] (Dkt. 6), seeking to enjoin an upcoming auction at which the assets of Defendant Lockhart Fine Foods, LLC ("LFF") will be sold. The parties filed responsive briefing, (Dkt. 10, 14, 17), and the Court held a telephone hearing on the motion, (Dkt. 22). Having considered the briefing, the arguments made at the hearing, the evidence, and the relevant law, the Court will deny the motion.

**I. BACKGROUND**

This is a dispute over a cookie-making business between DGG Group, a Texas company that previously manufactured cookies and cookie dough for wholesale and retail sale, (Am. Compl., Dkt. 13, at 1–2), and LLF, a Delaware company that purchased all of DGG Group's assets to take over DGG Group's cookie business, (id. at 2). The parties executed an Asset Purchase Agreement (the "Agreement") some time in December 2018. (Id.; Agreement, Dkt. 13-1). LFF paid $1,051,823 for DGG Group's cookie-making equipment (the "Assets") when the transaction closed. (Am. Compl., Dkt. 13, at 2).

---

[1] DGG Group's motion is construed only as a motion for preliminary injunction because it was filed after Defendant Lockhart Fine Foods appeared in the case. (*See* Notice of Removal, Dkt. 1.)

Things began to unravel during the subsequent transition period. As part of the transaction, LFF agreed to process orders and DGG Group agreed to make the cookies during a period of transition after the Agreement was executed. (*Id.* at 3). Since it would handle the administrative processing, LFF was entitled to a 10% discount on all finished goods sold by DGG Group. (*Id.*). DGG Group claims that LFF failed to process orders and that DGG Group had to do that while also providing LFF a discounted price at a cost of $10,771.75 to DGG Group. (*Id.*). DGG Group also allegedly incurred $15,179.46 in time and expenses helping LFF get its facility ready. (*Id.* at 4). Finally, DGG Group had to purchase ingredients and packaging materials for LFF because LFF "was having difficulty acquiring credit." (*Id.*). DGG alleges that LFF agreed to pay DGG Group a one-time true-up sum of $49,481.85 to cover DGG Group's losses during the transition period. (*Id.*).

According to DGG Group, LFF also failed to make revenue-sharing payments under the Agreement in 2019. LFF was required to pay 20% of net collected revenue in quarterly payments and place future consideration into a trust. (*Id.* at 5). DGG Group claims that LFF has shared incomplete quarterly sales figures and that LFF has made no payments and refused to place all future consideration into the trust. (*Id.*). DGG Group estimates that it is owed $567,528 in revenue-sharing payments. (*Id.*). Adding that to the true-up sum, DGG Group alleges $617,009.80 in damages. (*Id.* at 5–6). LFF denies that it owes DGG Group any money and states that it intends to file a counterclaim for breach of contract when it answers the complaint, telling the Court in a footnote that DGG Group breached the Agreement by selling LFF defective equipment. (Resp. Mot. Prelim. Inj., Dkt. 10, at 2 n.1).

Starting in January of this year, the dispute became a little more complicated. On January 17, 2020, DGG Group sent LFF a demand letter, (Demand Letter, Dkt. 13-2), that LFF claims it did not receive, (Glastris Aff., Dkt. 10-1, at 1). In that letter, DGG Group outlined what it believed it

was owed and stated that the letter should be considered a "presentment of claim pursuant to Chapter 38 of the Texas Civil Practices and Remedies Code." (Demand Letter, Dkt. 6, at 53–55). Shortly after, LFF granted a security interest in the Assets to Fifth Third Bank (the "Bank") on January 31, 2020 in exchange for cash to keep its business afloat. (Resp. Mot. Prelim. Inj., Dkt. 10, at 2). Ultimately, LFF was not able to operate profitably and agreed to sell the Assets at auction with the Bank agreeing to release its security interests on the Assets upon receipt of a guaranteed payment of $233,500 from the auction. (*Id.*). LFF states that it "remains indebted to [the Bank] in an amount in excess of $850,000." (*Id.*). The auction is scheduled for April 16, 2020. (*Id.* at 3). LFF represents that 156 buyers have registered to bid on the Assets. (Sur-reply, Dkt. 17, at 2).

In its reply brief, DGG Group raises the alarm that LFF's transactions have been fraudulent. (*See generally* Reply, Dkt. 14). In its response brief, LFF attached its Guarantor Security Agreement (the "Guarantor Agreement"), (Guarantor Agreement, Dkt. 10-2), to the affidavit of William Glastris, LFF's chairperson and managing member, (Glastris Aff., Dkt. 10-1). DGG Group argues that the Guarantor Agreement shows that LFF agreed to guaranty loans made to Sinbad Foods, LLC ("Sinbad") so that Sinbad could pay its workers and satisfy its previous debts. (Reply, Dkt. 14, at 1–2). DGG Group characterizes that transaction as LFF taking on liabilities and shedding its assets right before being sued by DGG Group. (*Id.* at 3). In its sur-reply,[2] LFF explains that LFF was formed to purchase the Assets for the "existing manufacturer" Sinbad that provided the facility, employees, operations, and management. (Sur-reply, Dkt. 17, at 1–2). In exchange for its services and the space, Sinbad was entitled to share in LFF's profits. (*Id.*).

---

[2] LFF filed its sur-reply as a "Supplement to Defendant's Opposition to Plaintiff's Application for Temporary Restraining Order and Preliminary Injunction." (*See* Sur-reply, Dkt. 17, at 1). LFF failed to file its sur-reply with a motion for leave. *See* W.D. Tex. Local Rule 7(f)(1) ("A party may file a reply in support of a motion. Absent leave of court, no further submissions on the motion are allowed."). DGG Group did not challenge LFF's submission at the hearing, and the Court has concluded that it will consider LFF's sur-reply but cautions LFF to follow all applicable rules.

## II. DISCUSSION

A preliminary injunction is an extraordinary remedy, and the decision to grant such relief is to be treated as the exception rather than the rule. *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking injunctive relief carries the burden of persuasion on all four requirements. *PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005). That party cannot be granted a preliminary injunction unless it can establish that it will suffer irreparable harm without an injunction. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).

Here, the Court's analysis begins and ends with its finding that DGG Group has not met its burden to show that it will be irreparably harmed in the absence of an injunction. The party seeking a preliminary injunction must prove that irreparable harm is likely, not merely possible. *Winter*, 555 U.S. at 22. In the Fifth Circuit, irreparable harm exists "where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2010). In this case, DGG Group is seeking monetary damages from LFF, which is a remedy at law. In fact, DGG Group provides an exact sum that it is owed. (Am. Compl., Dkt. 13, at 5–6). While that figure is partially based on estimates because DGG Group claims LFF has not shared revenue numbers, DGG Group has made a claim for monetary damages and could calibrate its damages claim, if necessary, after conducting discovery.

At times, an exception is made to the general rule that the availability of monetary damages negates irreparable harm, notably in cases where a fraudulent transfer is afoot. *See Janvey*, 647 F.3d at 600 (citing *Productos Carnic, S.A. v. Cent. Amer. Beef & Seafood Trading Co.*, 621 F.2d 683, 686–87 (5th

Cir.1980)) ("We have previously stated that where a district court has determined that a meaningful decision on the merits would be impossible without an injunction, the district court may maintain the status quo and issue a preliminary injunction to protect a remedy, including a damages remedy, when the freezing of the assets is limited to the property in dispute or its direct, traceable proceeds.").

That potential exception does not apply in this case. As LFF points out, the Assets appear to be excluded from the fraudulent transfer statute. Under the Texas Uniform Fraudulent Transfer Act, assets do not include "property to the extent it is encumbered by a valid lien." Tex. Bus. & Com. Code Ann. § 24.002(2). Auctioning the Assets therefore cannot be characterized as a fraudulent activity. Further, DGG Group has not identified evidence that the Bank is not a secured creditor or that the Assets are being sold at auction for a nefarious purpose.

DGG Group's contentions are similar to the arguments made in and rejected by the Western District of Texas in *Compass Bank v. Veytia*, No. EP-11-CV-228-PRM, 2011 WL 13234883 (W.D. Tex. Sept. 21, 2011). Plaintiff Compass Bank believed that defendants Carlos Veytia and Veronica Veytia were disposing of assets—and would continue to dispose of assets—to which Compass was entitled and that Compass would not be able to collect on a judgment in its favor because the Veytias would dispose of their assets before any judgment could be had. *Id.* at *1. The court found there was "insufficient evidence that that the Veytias are making themselves judgment proof by disposing of all their assets." *Id.* at *3. The court also reiterated that a plaintiff's fear that it may have difficulty collecting on a judgment is not a "proper purpose for an injunction. If it were, preliminary injunctions would not be considered extraordinary, drastic, or rare." *Id.*

Another insurmountable hurdle for DGG Group is establishing that it will suffer harm if the Assets are sold at auction. DGG Group claims that after the auction, LFF will have no ability to pay a judgment should the Court render judgment in DGG Group's favor and that the Assets should

not be sold at auction during the COVID-19 global pandemic because the Assets "will not fetch near the value that such assets would receive on the open market." (Mot. Prelim. Inj., Dkt. 6, at 7). While DGG Group may be proven correct that LFF will not have any assets remaining after the auction, DGG Group cannot complain of the method LFF uses to liquidate its assets when DGG Group admits that it is DGG Group's "opinion" that the Assets could be sold on the open market for more. (Mot. Prelim. Inj., Dkt. 6, at 7). DGG Group merely speculates that LFF might receive a higher price if the Assets are sold at a different time and in a different way. "[A] showing of a '[s]peculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant.'" *Janvey*, 647 F.3d at 600 (quoting *Productos Carnic*, 621 F.2d at 686–87). LFF persuasively uses DGG Group's logic to posit that LFF also might receive less money if it postpones the auction. (Resp. Mot. Prelim. Inj., Dkt. 10, at 4). Moreover, DGG Group does not challenge the legitimacy of the auction, and LFF represents that at least 156 buyers have registered to bid on the Assets, (Sur-reply, Dkt. 17, at 2).

Because DGG Group has not presented evidence of fraud and because DGG Group merely speculates that it will suffer harm if the Assets are sold at auction, DGG Group has not carried its burden of showing that it is likely to be irreparably harmed in the absence of a preliminary injunction. A preliminary injunction is not warranted. *See Amazon.com*, 239 F.3d at 1350.

### III. CONCLUSION

For these reasons, **IT IS ORDERED** that DGG Group's motion for preliminary injunction, (Dkt. 6), is **DENIED**.

**SIGNED** on April 15, 2020.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE