UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DGG GROUP, LLC, § | |
| § | |
| *Plaintiff* § | |
| § | |
| v. § | CIVIL NO. A-20-CV-330-RP |
| § | |
| LOCKHART FINE FOODS, LLC, § | |
| § | |
| *Defendant* § | |

**O R D E R**

Before this Court are Plaintiff DGG Group, LLC's Motion for Leave to File Plaintiff's Second Amended Complaint (Dkt. No. 26), filed April 27, 2020; Defendant Lockhart Fine Foods, LLC's Opposition to Plaintiff's Motion for Leave to File Second Amended Complaint (Dkt. No. 30), filed May 4, 2020; and Plaintiff's Reply (Dkt. No. 32), filed May 8, 2020. On April 28, 2020, the District Court referred the motion to the undersigned Magistrate Judge for resolution pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas.

**I.   Background**

Plaintiff is a Texas limited liability company that previously manufactured cookies and cookie dough for wholesale and retail sale. Defendant is a Delaware limited liability company "created for the sole purpose of purchasing all of the assets of Plaintiff for the express purpose of taking on Plaintiff's cookie business." First Amended Complaint (Dkt. No. 13) at ¶ 4. In December 2018, Plaintiff and Defendant executed an Asset Purchase Agreement (the "Agreement") in which Defendant agreed to buy and Plaintiff agreed to sell certain assets used in the manufacturing, production, and sale of cookies, cookie dough, and other food products (the "Assets"). Dkt. No. 13-1. Pursuant to the Agreement, Defendant was to make certain payments to Plaintiff in

consideration and in exchange for the Assets described in the Agreement. Plaintiff alleges that Defendant violated the terms of the Agreement by failing to make all required payments. *Id.* at ¶ 5. Plaintiff alleges that Defendant owes it $617,009.85. Defendant contends that Plaintiff violated the Agreement by delivering "equipment to [Defendant] that was dirty, moldy, missing parts, defective and otherwise in disrepair;" refusing to provide certain transition services; and failing to provide it with negotiated discounts. Dkt. No. 25 at ¶ 7(a). Defendant contends that these breaches caused the loss of its customers and its investment of $2.5 million.

On February 17, 2020, Plaintiff filed this lawsuit in state court against Defendant alleging breach of contract, fraud, and breach of fiduciary duties. *DGG Group, LLC v. Lockhart Fine Foods, LLC*, No. 20-0-082 (421st Dist. Ct., Caldwell County, Tex. Feb. 17, 2020). Plaintiff filed its First Amended Complaint on April 9, 2020, adding a claim that Defendant fraudulently transferred the Assets by selling them at auction. Dkt. No. 13 at ¶ 29. Defendant has filed counterclaims against Plaintiff for breach of contract and fraud. On March 26, 2020, Defendant removed this case to federal court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1441(b)(2).

On April 3, 2020, Plaintiff filed an Application for Temporary Restraining Order and Preliminary Injunction ("Motion for TRO") seeking to prevent the auction of the Assets after it "learned that all or substantially all of the equipment transferred to Defendant pursuant to the Agreement is being sold at auction by virtue of an assignment for the benefit of creditors on April 16, 2020." Dkt. No. 6 at ¶ 18. The District Court denied the Motion for TRO, finding that DGG Group had not met its burden to show that it would be irreparably harmed in the absence of an injunction. Dkt. No. 23 at p. 4. The Assets were sold at public auction on April 16, 2020.

Plaintiff now seeks leave to amend its complaint to add additional parties as defendants. Plaintiff alleges that because "all of the assets that Plaintiff sold to Defendant under the purchase and sale agreement were sold at public auction . . . Plaintiff believes it has additional claims against additional parties that were transferees for a fraudulent transfer under the Texas Uniform Fraudulent Transfer Act." Dkt. No. 26 at ¶ 4. Plaintiff seeks to add two defendants as purported transferees of the Assets: Sinbad Foods, LLC ("Sinbad") and Fifth Third Bank, National Association ("Fifth Third Bank").

Defendant argues that the Court should deny the motion because Plaintiff does not allege a plausible claim against either Sinbad or Fifth Third Bank, and because the Court lacks personal jurisdiction over both Sinbad and Fifth Third Bank.

## II.   Legal Standard

The Federal Rules of Civil Procedure permit a party to amend its pleading "once as a matter of course," but afterwards "only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(1)-(2). "The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Rule 15(a) "evinces a bias in favor of granting leave to amend." *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004). A district court must provide a "substantial reason" to deny a party's request for leave to amend, such as undue delay, bad faith, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility of the amendment. *Id.*; *see also N. Cypress Med. Ctr. Operating Co., Ltd v. Aetna Life Ins. Co.*, 898 F.3d 461, 477 (5th Cir. 2018). Absent a substantial reason, "the discretion of the district court is not broad enough to permit denial." *Mayeaux*, 376 F.3d at 425.

Here, Defendant argues that the Court should deny the Motion to Amend because it would be futile. For the purposes of the futility analysis, courts apply the same standard of legal sufficiency

3

applicable to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000).

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Id.* at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Twombly*, 550 U.S. at 555 (cleaned up).

The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Id.*

### III.   Analysis

As stated, Defendant argues that Plaintiff's amendment would be futile because (1) Plaintiff does not allege a plausible claim against Sinbad or Fifth Third Bank, and (2) the Court does not

4

have personal jurisdiction over Sinbad or Fifth Third Bank. The Court considers each of Defendant's arguments in turn.

### A. Plaintiff's Newly Asserted Claims Are Plausible

In its First Amended Complaint, Plaintiff alleges that Defendant "transferred substantially all of its assets to at least one other company, with actual intent to hinder, delay, or defraud creditors, in violation of the Texas Uniform Fraudulent Transfer Act (the 'TUFTA'), which has resulted in damages to Plaintiff, or otherwise resulted in a statutory right of recovery for Plaintiff." Dkt. No. 13 at ¶ 29. Plaintiff now seeks to add a TUFTA fraudulent transfer claim against Sinbad and Fifth Third Bank, alleging that they are liable for fraudulent transfer as transferees under Texas Business and Commerce Code § 24.009(b). Dkt. No. 26-1 at ¶ 37.

Under TUFTA, "a fraudulent conveyance is a transfer by a debtor with the intent to hinder, delay, or defraud his creditors by placing the debtor's property beyond the creditor's reach." *Franklin D. Azar & Assocs., P.C. v. Bryant*, 2018 WL 6929339, at *4 (E.D. Tex. Nov. 14, 2018), *report and recommendation adopted*, 2019 WL 181004 (E.D. Tex. Jan. 12, 2019) (citing *Nobles v. Marcus*, 533 S.W.2d 923, 925 (Tex. 1976)). A TUFTA violation may arise if the debtor made a transfer: "(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor." TEX. BUS. & COM. CODE § 24.005. In addition, TUFTA provides that a judgment may be entered against the first transferee of assets or the person for whose benefit the transfer was made. *Id.* § 24.009(b)(1). "When determining the liability of a transferee, TUFTA focuses on the intent of the transferor rather than the transferee, i.e., if the transferor had an intent to hinder, delay, or defraud any creditor, that intent is sufficient to hold a transferee liable." *Bryant*, 2018 WL 6929339, at *4 (citing *In re IFS Fin. Corp.*, 669 F.3d 255, 264 (5th Cir. 2012)). Thus, a transferee

is subject to liability for fraudulent transfers regardless of intent, unless the transferee can assert that the transfer was taken in good faith or for reasonable value. TEX. BUS. & COM. CODE § 24.009.

In support of its fraudulent transferee claims against Sinbad and Fifth Third Bank, Plaintiff alleges, in relevant part, the following:

> LFF transferred substantially all of its assets to Sinbad by personally guaranteeing a loan of $243,000.00 to Sinbad to supposedly cover payroll. LFF did not receive reasonable equivalent value and made the transfer at a time when LFF was insolvent, and as such committed a fraudulent transfer under Section 24.006(a) of the Texas Business and Commerce Code (the "Code"). Further, LFF is liable under Section 24.0006(b) because LFF transferred its assets to Sinbad, which is an insider as the managing agent of LFF pursuant to Section 24.002(7)(E). The transfer was made for an antecedent debt, was made when LFF was insolvent, and Sinbad knew that LFF was insolvent.
>
> ***
>
> Further, pursuant to Section 24.009(b) of the Code, Plaintiff seeks a judgment against Sinbad and Fifth Third Bank as transferees. LFF was the first transferee under Section 24.009(b)(1), and Fifth Third Bank was a subsequent transferee under Section 24.009(b)(2). Fifth Third Bank knew that LFF was insolvent when it made the transfer to secure the loan that Fifth Third Bank extended to Sinbad, which apparently only held Sinbad afloat for eleven days, if at all.
>
> ***
>
> Plaintiff assumes that Third First Bank, by virtue of its purported but ineffective security interest, will receive the proceeds of the auction to be applied toward its claimed debt of Sinbad, as purportedly guaranteed by LLF. As Third First Bank's security interest in the LLF equipment is ineffective, as alleged herein, any such transfer of funds by the auctioneer to Third First Bank is wrongful and in violation of applicable law. As such, both Sinbad and Fifth Third Bank are liable for fraudulent transfer as transferees under Section 24.009(b) of the Code.

Dkt. No. 26-1 at ¶¶ 35-37.

Defendant argues that Plaintiff's fraudulent transfer claim against Sinbad and Third First Bank fails to state a plausible claim under Rule 12(b)(6) because the District Court denied the Motion

for TRO and allegedly "concluded," in Defendant's words, that "Plaintiff was not likely to succeed on a fraudulent transfer claim against LFF." Defendant's Response, Dkt. No. 30 at p. 3. Defendant reads too much into the District Court's Order denying the Motion for TRO.

First, the question presented to the District Court in the Motion for TRO was not whether Plaintiff had met the standard for asserting a plausible claim under Rule 12(b)(6), but rather whether Plaintiff had met the stringent standard for granting the "extraordinary relief" of a preliminary injunction. As the District Court explained: "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Dkt. No. 23 at 4 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). In addition, the Court noted that a "party cannot be granted a preliminary injunction unless it can establish that it will suffer irreparable harm without an injunction." *Id.* (citing *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001). Thus, the standard used by courts to grant a preliminary injunction is much more stringent than the standard used under Rule 12(b)(6), which only requires a plaintiff to allege a plausible claim for relief. *See Barclays Bank PLC*, 594 F.3d at 387 ("The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."); *RavenSafe, LLC v. Nexus Tech., Inc.*, 2019 WL 4594197, at *3 (W.D.N.C. Sept. 20, 2019) (noting that a motion for preliminary injunction "has a different and more-stringent standard of review than the motion to dismiss standard").

The District Court, moreover, did not conclude that Plaintiff failed to state a plausible claim for relief under Rule 12(b)(6); rather, the District Court ruled that Plaintiff had not met its heavy burden to show that it would have been irreparably harmed in the absence of an injunction because

it had an adequate remedy at law, namely, a claim for monetary damages. *See* Dkt. No. 23 at 4. While the District Court acknowledged that an exception may be made to the general rule that the availability of monetary damages negates irreparable harm, "notably in cases where a fraudulent transfer is afoot," the Court concluded that the fraudulent transfer exception did not apply in this case. *Id.* at 4-5. Specifically, the District Court reasoned that "the Assets appear to be excluded from the fraudulent transfer statute" because, under TUFTA, "assets do not include 'property to the extent it is encumbered by a valid lien.'" *Id.* at 5 (quoting TEX. BUS. & COM. CODE ANN. § 24.002(2)). The District Court further found that Plaintiff had "not identified evidence that the Bank is not a secured creditor or that the Assets are being sold at auction for a nefarious purpose." *Id.* The District Court concluded: "Because DGG Group has not presented evidence of fraud and because DGG Group merely speculates that it will suffer harm if the Assets are sold at auction, DGG Group has not carried its burden of showing that it is likely to be irreparably harmed in the absence of a preliminary injunction." *Id.* at 6. In sum, the District Court denied the Motion for TRO because Plaintiff failed to come forward with sufficient evidence to show that (1) the Assets fell within TUFTA, and (2) Plaintiff would be irreparably harmed if the Assets were sold.

As noted above, at the Rule 12(b)(6) stage of the proceedings, the Court does not weigh the evidence or evaluate the plaintiff's likelihood of success. *Barclays Bank*, 594 F.3d at 387. Instead, the Court determines whether the plaintiff has stated a plausible claim for relief. As the Supreme Court has made clear, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). The Court finds that Plaintiff has alleged sufficient facts to state a plausible claim for relief under TUFTA.

### B. The Court Has Personal Jurisdiction Over the New Defendants

Defendant also argues that the Court should deny the Motion to Amend because the Court lacks personal jurisdiction over both Sinbad, a Delaware corporation, and Third Fifth Bank, an Illinois corporation.

A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant if the state's long-arm statute permits an exercise of jurisdiction over that defendant and an exercise of jurisdiction would comport with the requirements of the Due Process Clause of the Fourteenth Amendment. *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018); *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). Because the requirements of the Texas long-arm statute are coextensive with the requirements of the Due Process Clause, the sole inquiry is whether the Court's exercise of personal jurisdiction over the defendant would be consistent with due process. *Sangha*, 882 F.3d at 101. For personal jurisdiction to satisfy due process requirements, a plaintiff must show that (1) the defendant purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend traditional notions of "fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).

A defendant's "minimum contacts" may give rise to either specific or general personal jurisdiction, depending on the nature of the suit and the defendant's relationship to the forum state. *Sangha*, 882 F.3d at 101. Specific jurisdiction exists "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (internal quotation marks omitted). For minimum contacts to exist,

9

> a defendant must have purposefully availed himself of the benefits and protections of the forum state such that he should reasonably anticipate being haled into court there. That requirement is the constitutional touchstone of personal jurisdiction. It ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person. That is, the plaintiff cannot supply the only link between the defendant and the forum. Rather, jurisdiction is proper only where the defendant *himself* made deliberate contact with the forum.

*Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193-94 (5th Cir. 2019) (cleaned up).

A court may assert general jurisdiction over non-resident defendants "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Ops.*, *S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317).

The plaintiff has the burden of establishing personal jurisdiction over a defendant. *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 233 (5th Cir. 2016). If, as here, the court rules on personal jurisdiction without conducting an evidentiary hearing, the plaintiff bears the burden of establishing only a *prima facie* case of personal jurisdiction; proof by a preponderance of the evidence is not required. *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019). In determining whether the plaintiff has presented a *prima facie* case of personal jurisdiction, the court "must accept the plaintiff's uncontroverted allegations, and resolve in his favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Patterson*, 826 F.3d at 233.

Defendant argues that the Court does not have general jurisdiction over Sinbad or Fifth Third Bank because neither defendant has continuous and systematic contacts with Texas. Defendant also argues that the Court does not have specific jurisdiction over Sinbad and Fifth Third Bank

because Plaintiff's allegations against these defendants do not arise from or relate to any alleged conduct by either defendant in Texas.

Plaintiff contends that the Court has general jurisdiction over Fifth Third Bank because it has had continuous and systematic contacts with Texas by "transact[ing] business through dozens of ATMs located in Austin, Texas." Dkt. No. 32 at 4. Plaintiff further contends that Fifth Third Bank has purposefully availed itself of the privilege of conducting business in Austin, Texas, through such banking transactions with its customers through its network of ATMs. Because the Court "must accept the plaintiff's uncontroverted allegations, and resolve in his favor all conflicts between the facts contained in the parties' affidavits and other documentation," the Court finds that Plaintiff has alleged sufficient facts to demonstrate a *prima facie* case of personal jurisdiction over Fifth Third Bank at the Rule 15(a) stage of the case. *Patterson*, 826 F.3d at 233.

Plaintiff asserts that the Court has specific jurisdiction over Sinbad because (1) Sinbad has admitted that "LFF was formed to take advantage of a new business opportunity – purchasing Plaintiff's cookie-making operations and business model," and (2) "Sinbad sought out this opportunity in Texas, managed and funded the transaction through which [LFF] purchased the assets from Plaintiff, and then orchestrated what Plaintiff contends was a fraudulent transfer." Dkt. No. 30 at 4, 6. The Court finds that Plaintiff has alleged sufficient facts to allege a *prima facie* case of specific jurisdiction over Sinbad at this stage.

## IV.    Conclusion

Based on the foregoing, the Court finds that Defendant has failed to demonstrate that Plaintiff's amendment would be futile. Because Defendant has failed to demonstrate a "substantial reason" to deny the Motion to Amend, the discretion of this Court "is not broad enough to permit denial." *Mayeaux*, 376 F.3d at 425. Accordingly, Plaintiff's Motion for Leave to File Plaintiff's Second Amended Complaint (Dkt. No. 26) is **GRANTED**.

The Court **FURTHER ORDERS** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Robert Pitman.

**SIGNED** on May 13, 2020.

                                                                                          _____
                                                                                         SUSAN HIGHTOWER
                                                                                         UNITED STATES MAGISTRATE JUDGE