UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **DGG GROUP, LLC,** | § |
| *Plaintiff* | § § § |
| v. | § § Case No. 1:20-CV-00330-RP |
| **LOCKHART FINE FOODS, LLC, SINBAD FOODS, LLC, and FIFTH THIRD BANK, NATIONAL ASSOCIATION,** | § § § § § § |
| *Defendants* | § |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

**TO:   THE HONORABLE ROBERT PITMAN
        UNITED STATES DISTRICT JUDGE**

Before the Court are Defendant Fifth Third Bank's Motion to Dismiss for Lack of Personal Jurisdiction, filed July 20, 2020 (Dkt. 43); Defendant Sinbad Foods, LLC's 12(b)(2) Motion to Dismiss Plaintiff's Second Amended Complaint, filed August 3, 2020 (Dkt. 49); and the associated response and reply briefs. On December 3, 2020, the District Court referred the motions to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas.

**I.   Background**

Plaintiff DGG Group, LLC is a Texas limited liability company that previously manufactured cookies and cookie dough for wholesale and retail sale. Defendant Lockhart Fine Foods, LLC ("Lockhart") is a Delaware limited liability company "created for the sole purpose of purchasing all of the assets of Plaintiff for the express purpose of taking on Plaintiff's cookie business."

Dkt. 35 ¶ 6. In December 2018, Plaintiff and Lockhart executed an Asset Purchase Agreement ("APA") in which Lockhart agreed to buy and Plaintiff agreed to sell certain assets used in the manufacturing, production, and sale of cookies, cookie dough, and other food products (the "Assets"). Dkt. 35-1.

On January 22, 2019, Lockhart entered into a Management Services Agreement ("MSA") with Defendant Sinbad Foods, LLC ("Sinbad"), a Delaware Limited Liability Company. Sinbad agreed to manage all aspects of the cookie business Lockhart had acquired under the Asset Purchase Agreement in exchange for all net profits payable as management fees. Dkt. 35-3 at 1-2, 6. William V. Glastris, Jr. executed the MSA in his capacity as the Chairman of Lockhart and also as the Chairman of Sinbad. *Id.* at 5.

Pursuant to the APA, Lockhart was required to make payments to Plaintiff in consideration and exchange for the Assets described in the agreement. Plaintiff alleges that Lockhart violated the terms of the APA by failing to make all required payments. Dkt. 35 ¶ 7. Plaintiff alleges that Lockhart owes it at least $617,009.85. *Id.* ¶ 20. Lockhart contends that Plaintiff violated the APA by delivering equipment "that was dirty, moldy, missing parts, defective and otherwise in disrepair;" refusing to provide certain transition services; and failing to provide it with negotiated discounts. Counterclaim, Dkt. 36 at 7 ¶ 7. Lockhart contends that these breaches caused it to lose customers and its investment of approximately $2.5 million. *Id.* ¶ 9.

On January 17, 2020, Plaintiff sent a letter to Lockhart demanding immediate payment of the amounts allegedly owed under the APA. Dkt. 35-2 at 3. On January 31, 2020, Lockhart executed a Guarantor Security Agreement with Defendant Fifth Third Bank, National Association ("Fifth Third Bank") to secure a loan in the amount of $243,000 for Sinbad. Dkt. 35-4 at 1. Lockhart used the Assets purchased from Plaintiff as collateral for the loan. *Id.* at 12.

On February 17, 2020, Plaintiff filed this suit in state court against Lockhart, alleging breach of contract, fraud, and breach of fiduciary duties. *DGG Group, LLC v. Lockhart Fine Foods, LLC*, No. 20-0-082 (421st Dist. Ct., Caldwell County, Tex. Feb. 17, 2020). On March 26, 2020, Lockhart removed this case to federal court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1441(b)(2).

On April 3, 2020, Plaintiff filed an Application for Temporary Restraining Order and Preliminary Injunction seeking to prevent the auction of the Assets after it "learned that all or substantially all of the equipment transferred to Defendant pursuant to the Agreement [was] being sold at auction by virtue of an assignment for the benefit of creditors on April 16, 2020." Dkt. 6 ¶ 18. The District Court denied the Motion for TRO, finding that Plaintiff had not met its burden to show that it would be irreparably harmed in the absence of an injunction. Dkt. 23 at 4. On April 9, 2020, Plaintiff filed its First Amended Complaint, adding a claim that Lockhart fraudulently transferred the Assets. Dkt. 13 ¶ 29. Lockhart filed counterclaims against Plaintiff for breach of contract and fraud. The Assets were sold at public auction on April 16, 2020, to pay Sinbad's debt to Fifth Third Bank. Dkt. 35 ¶ 24. On May 13, 2020, Plaintiff filed its Second Amended Complaint to add Defendants Sinbad and Fifth Third Bank as transferees of the Assets under the Texas Uniform Fraudulent Transfers Act ("TUFTA"). Dkt. 35 ¶¶ 36-37.

Fifth Third Bank and Sinbad each move to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

## II.   Legal Standard

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. The plaintiff has the burden of establishing jurisdiction. *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 233 (5th Cir. 2016). If, as here, the court rules on personal jurisdiction without conducting an evidentiary hearing, the plaintiff bears the

burden of establishing only a prima facie case of personal jurisdiction. *Id.* "Proof by a preponderance of the evidence is not required." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019) (quoting *Johnston v. Multidata Sys. Int'l Corp.* 523 F.3d 602, 609 (5th Cir. 2008)). In determining whether the plaintiff has presented a prima facie case of personal jurisdiction, the court "must accept the plaintiff's uncontroverted allegations, and resolve in his favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Patterson*, 826 F.3d at 233.

A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant if the state's long-arm statute permits an exercise of jurisdiction over that defendant and an exercise of jurisdiction would comport with the requirements of the Due Process Clause of the Fourteenth Amendment. *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018); *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). Because the requirements of the Texas long-arm statute are coextensive with the requirements of the Due Process Clause, the sole inquiry is whether the Court's exercise of personal jurisdiction over the defendant would be consistent with due process. *Sangha*, 882 F.3d at 101. In order for personal jurisdiction to satisfy due process requirements, a plaintiff must show that (1) the defendant purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend traditional notions of "fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).

A defendant's "minimum contacts" may give rise to either general or specific personal jurisdiction, depending on the nature of the suit and the defendant's relationship to the forum state. *Sangha*, 882 F.3d at 101. A court may assert general jurisdiction over non-resident defendants

"when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317). Specific jurisdiction exists "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (quotation marks omitted).

> For there to be minimum contacts, a defendant must have purposefully availed himself of the benefits and protections of the forum state such that he should reasonably anticipate being haled into court there. That requirement is the constitutional touchstone of personal jurisdiction. It ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person. That is, the plaintiff cannot supply the only link between the defendant and the forum. Rather, jurisdiction is proper only where the defendant *himself* made deliberate contact with the forum.

*Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193-94 (5th Cir. 2019) (cleaned up).

### III.   Analysis

The Court addresses Defendant Fifth Third Bank's Motion to Dismiss and Defendant Sinbad's Motion to Dismiss in turn.

**A. Defendant Fifth Third Bank's Motion to Dismiss**

Plaintiff relies on the doctrine of general jurisdiction to support its argument that the Court has personal jurisdiction over Fifth Third Bank. Dkt. 48 at 2. The Supreme Court has instructed that: "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *Goodyear*, 564 U.S. at 924). With respect to a corporation, the place of incorporation and principal place of business are easily ascertainable and typical bases for general jurisdiction. *Id.* General jurisdiction also may

exist where a "corporation's affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* at 139 (quoting *Goodyear*, 564 U.S. at 919). In determining whether general jurisdiction exists, courts do not examine each of a non-resident's contacts with the forum state in isolation from one another, but rather examine them "in toto." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779 (5th Cir. 1986).

It is undisputed that Fifth Third Bank is an Ohio corporation headquartered in Ohio. Dkt. 35 ¶ 4; Dkt. 43-1 ¶ 2. Therefore, Plaintiff must show that Fifth Third Bank's contacts with the State of Texas are extensive enough to justify the exercise of general jurisdiction.

### 1. Fifth Third Bank's Contacts with Texas

Fifth Third Bank argues that Plaintiff has failed to establish that its contacts with Texas are sufficiently substantial to justify the exercise of general jurisdiction over it as a nonresident defendant. Fifth Third Bank asserts that it does not operate any bank branches or ATMs in Texas or have a regular place of business in Texas. Dkt. 43 at 4-5. Fifth Third Bank also asserts that the "vast majority" of its customers are not located in Texas. *Id.* at 5.

Plaintiff alleges that Fifth Third Bank "transacts business through dozens of ATMs located in Austin, Texas." Dkt. 48 at 2. These ATMs are "part of the Allpoint, Presto!, and 7-Eleven network, which features more than 50,000 fee-free ATMs nationwide." *Id.* Plaintiff further alleges that Fifth Third Bank:

- regularly makes loans to Texas residents, and has hired attorneys to enforce and protect its rights in Texas, *id.* at 3;
- has nearly 30 employees in Texas and is in the process of hiring more, *id.* at 4-5; and
- has "established an office and is attempting to expand its presence as a commercial bank in the in Texas market." *Id*. at 4.

Plaintiff argues that, by engaging in banking transactions with Texas-based customers and taking legal action in Texas to enforce its rights, Fifth Third Bank has purposefully availed itself of the

6

privilege of conducting business in Texas and is subject to this Court's general jurisdiction. The Court examines each alleged contact in turn, then assess whether collectively they support the exercise of general jurisdiction.

First, it is undisputed that Fifth Third does not operate any bank branches or ATMs in Texas. Dkt. 48 at 2; Dkt. 43-1 ¶ 2. The ATMs in Texas at which a Fifth Third Bank debit card can be used are operated by third parties as "part of the Allpoint, Presto!, and 7-Eleven network." *Id.* at 2-3. "As a general rule . . . the proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated." *Henneberger v. Ticom Geomatics, Inc.*, Civil Action No. 1:18-CV-134-RP, 2018 WL 6588528, at *3 (W.D. Tex. Dec. 12, 2018) (quoting *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004)); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (stating that unilateral activity of another party or a third person does not show defendant availed itself of forum). Courts have found a lack of general jurisdiction even where a nonresident bank operates its own branches and ATMs in a forum state. *See, e.g., Evan v. Diners Club Int'l, Ltd.*, No. 2:16-CV-178-RL-PRC, 2017 WL 4784667, at *2 (N.D. Ind. Oct. 24, 2017) (finding no support for exercise of general jurisdiction over defendant national bank even if it had active card members, branches, and ATMs in forum state); *Freedman v. Suntrust Banks, Inc.*, 139 F. Supp. 3d 271, 279-80 (D.D.C. 2015) (finding no general jurisdiction over defendant national bank despite its operation of numerous retail branches and ATMs in forum state). The ability of Texas residents to access Fifth Third Bank accounts through a third-party, nationwide network of more than 50,000 ATMs does not support general jurisdiction in Texas.

Next, Plaintiff alleges that Fifth Third Bank has executed numerous loans and other financial instruments with Texas residents and hired Texas attorneys to enforce them. Dkt. 48 at 3-4;

Dkt. 48-1. Although these activities are relevant to whether Fifth Third Bank's contacts are "continuous and systemic," a national bank may make loans and engage in financial transactions with customers in a forum state without becoming subject to general jurisdiction. *See Brumfield v. TransUnion, Inc.*, Civil Action No. 19-13094, 2020 WL 1083598, at *3 (E.D. La. Mar. 6, 2020) (finding that nonresident national lender was not subject to general jurisdiction although it serviced loans to customers within forum state); *Namer v. Bank of Am., N.A.*, Civil Action No. 15-3130, 2016 WL 1089352, at *4 (E.D. La. Mar. 21, 2016) (finding no general jurisdiction where nonresident national bank made business and home loans to customers in forum state). Also, the mere existence of an attorney-client relationship in the forum state does not support the exercise of general jurisdiction. *See Linton v. Johnson*, No. 5-10-CV-00585 OG (NN), 2011 WL 1743677, at *4 (W.D. Tex. May 5, 2011), *adopted by* 2011 WL 13272450 (W.D. Tex. May 31, 2011) (stating that neither mere existence of attorney/client relationship nor routine correspondence and interactions attendant to that relationship are sufficient to confer general personal jurisdiction).

Finally, relying on recent job postings and media reports, Plaintiff alleges that Fifth Third Bank has a growing presence in Texas, which supports the exercise of general jurisdiction. Dkt. 48 at 4-5. A defendant's contacts for purposes of personal jurisdiction are assessed at the time complaint is filed. *Icon Bldg. Sys., LLC v. Premier Steel Bldgs., Inc.*, Civil Action No. W-08-CA-157, 2008 WL 11334518, at *3 (W.D. Tex. Sept. 30, 2008) ("The relevant time for determining jurisdiction is the filing of the complaint, and personal jurisdiction thus depends on a defendant's contacts with the forum at the time the lawsuit was filed."). Even assuming that Fifth Third Bank had more than 30 employees, maintained at least one office in Texas, and was undergoing significant growth in the Texas market at the time Plaintiff filed its Second Amended Complaint, Fifth Third Bank's activities do not demonstrate the degree of presence in Texas the Supreme Court has required to

exercise general jurisdiction over a nonresident defendant. *See BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) (finding that defendant's operation of 2,000 miles of railroad track and presence of over 2,000 employees in forum state did not confer general jurisdiction); *Daimler*, 571 U.S. at 123, 139 (finding that general jurisdiction did not exist where defendant was largest supplier of luxury vehicles in forum state, accounting for 2.4 percent of defendant's worldwide sales).

After examining Fifth Third Bank's alleged contacts as a whole and in a light most favorable to Plaintiff, the Court finds that Plaintiff has not made a prima facie showing that Fifth Third Bank's contacts are so continuous and systematic that it is subject to general jurisdiction in Texas. *See Johnston*, 523 F.3d at 609 ("The 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'") (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001)). Accordingly, the undersigned recommends that Fifth Third Bank's Motion to Dismiss should be granted.

### 2. Plaintiff's Request for Jurisdictional Discovery

Plaintiff seeks jurisdictional discovery to "further explore Fifth Third Bank's contacts with Texas." Dkt. 48 at 6. Fifth Third Bank opposes the request, arguing that Plaintiff has not stated a prima facie case for general jurisdiction and additional discovery will not change the outcome, given the undisputed facts as to its contacts with Texas. Dkt. 50 at 7-8.

As the party opposing dismissal and requesting discovery, the plaintiff bears the burden of demonstrating that discovery is necessary. *Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013). A plaintiff is not entitled to jurisdictional discovery when the record shows that the requested discovery is not likely to produce the facts needed to withstand a motion to dismiss. *Monkton Ins. Servs., Ltd v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014). Here, the undisputed facts regarding the nature and breadth of Fifth Third Bank's contacts with Texas, coupled with the

standard for exercise of general jurisdiction set by *Daimler* and *BNSF*, make it highly unlikely that additional discovery will alter the result. Plaintiff has not specified why additional discovery is necessary or what facts it expects to uncover to support the exercise of general jurisdiction. Dkt. 48 at 6. *See Monkton Ins. Servs.*, 768 F.3d at 434 (affirming denial of request for jurisdictional discovery where plaintiff could not state how request would change jurisdictional determination). Accordingly, Plaintiff's request for jurisdictional discovery should be denied.

## B. Defendant Sinbad Foods LLC's Motion to Dismiss

Plaintiff relies on the doctrine of specific jurisdiction to support its argument that the Court has jurisdiction over Sinbad. Dkt. 51 at 2. Specific jurisdiction focuses on the relationship among the defendant, the forum, and the litigation. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The Fifth Circuit has articulated a three-step analysis for the specific jurisdiction inquiry:

1. whether the defendant has minimum contacts with the forum state, i.e. whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there;
2. whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and
3. whether the exercise of personal jurisdiction is fair and reasonable.

*Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). If the plaintiff satisfies the first two prongs, the burden shifts to the defendant to make a "compelling case" that the assertion of jurisdiction is not fair or reasonable. *Id.*

### 1. Sinbad Has Minimum Contacts with Texas as Lockhart's Alter Ego

Sinbad, which is no longer in business, is a Delaware limited liability company located in California. Dkt. 49 at 2; Dkt. 49-2 ¶ 2. Plaintiff asserts that Sinbad formed Lockhart "to take advantage of a new business opportunity—purchasing Plaintiff's cookie-making operation and business model for Sinbad." Dkt. 51 at 3. Plaintiff argues that Lockhart's contacts with Texas should be imputed to Sinbad as its alter ego or agent for the purpose of establishing specific

jurisdiction. *Id.* Sinbad argues that it has no contacts with Texas and there is no evidence that it purposefully directed any activities toward Texas. Dkt. 49 at 1. Sinbad points out that it was not a party to the Asset Purchase Agreement between Plaintiff and Lockhart that forms the basis of this suit. *Id.* Sinbad asserts that after the APA was fully executed, it entered into the Management Services Agreement with Lockhart for use of cookie manufacturing equipment then located in California. Dkt. 52 at 2. Sinbad argues that, even if it were a fraudulent transferee of Lockhart's equipment, as Plaintiff alleges, the transfer occurred in California. *Id.* at 2.

The Fifth Circuit has held that

> it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court.

*Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 653 (5th Cir. 2002). Because the two corporations (or the corporation and its alter ego) are the same entity, the jurisdictional contacts of one are the jurisdictional contacts of the other. *Id.* The Fifth Circuit generally demands "proof of control by [one corporation] over the internal business operations and affairs of another corporation to make the other its agent or alter ego, and hence fuse the two together for jurisdictional purposes."[1] *Freundensprung*, 379 F.3d at 346. The evidence required to overcome the presumption of corporate separateness is a "plus factor" and something beyond mere presence in the same corporate family. *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir.

---

[1] Nonexhaustive factors Courts consider in determining whether a plaintiff asserting personal jurisdiction has overcome the presumption of corporate separateness include (1) the amount of stock owned by the parent of the subsidiary; (2) whether the entities have separate headquarters, directors and officers; (3) whether corporate formalities are observed; (4) whether the entities maintain separate accounting systems; and (5) whether the parent exercises complete control over the subsidiary's general policies or daily activities. *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338-39 (5th Cir. 1999).

1999). To be an alter ego, an entity must be organized or operated as a mere tool or business conduit of another company. *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 593 (5th Cir. 1999).

Here, Plaintiff has provided sufficient proof that Sinbad controlled Lockhart to such a degree that they should be treated as alter egos for purposes of jurisdiction. It is undisputed that the Lockhart entity "was formed to take advantage of a new business opportunity—purchasing Plaintiff's cookie-making operation and business model for Sinbad (an existing manufacturer)." Dkt. 30 at 4. A month after Plaintiff and Lockhart executed the APA, Lockhart and Sinbad entered into the MSA granting operational control of Lockhart's business to Sinbad in exchange for all Lockhart's net profits, which were payable to Sinbad as management fees. Dkt. 35-3 at 1-2, 6. Lockhart also transferred to Sinbad "all its right, title, and interest in, to and under the working capital assets acquired pursuant to the [APA]." *Id.* at 2. The MSA was executed by William V. Glastris, Jr., in his capacity as the both the Chairman of Lockhart and the Chairman of Sinbad. *Id.* at 5. Sinbad's control over Lockhart's business operations, assets, and net profits under the terms of the MSA support a determination that they are alter egos for purposes of jurisdiction. *See Cantu v. Titlemax, Inc.*, No. 5:14-CV-628-RP, 2015 WL 4526987, at *7 (W.D. Tex. July 23, 2015) (finding that jurisdictional contacts should be imputed under alter ego theory where plaintiffs presented evidence of defendant's control of day-to-day business operations).

Because Lockhart's contacts with Texas are properly imputed to Sinbad, the Court must determine whether Lockhart has minimum contacts with Texas. Defendants who purposefully engage in business activities within a state knowingly benefit from the availability of that state's market, and therefore may reasonably foresee that claims arising from their business transactions will subject them to suit in the forum state. *Dontos v. Vendomation NZ Ltd.*, 582 F. App'x 338, 348 (5th Cir. 2014). For cases involving TUFTA claims, a plaintiff can show minimum contacts

by alleging purposeful conduct directed at a creditor in the forum state. *Id.* at 347 (citing *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 400 (5th Cir. 2009)).

Lockhart executed the APA with Plaintiff, a Texas Limited Liability Company based in Texas. Dkt. 35 ¶ 1; Dkt. 51 at 4. As part of the transaction, the parties negotiated a transition period during which Plaintiff manufactured products in Texas for Lockhart and shipped orders directly to Lockhart's customers on Lockhart's behalf. Dkt. 35 ¶ 9. Lockhart was to handle the administrative processing for all customer orders during the transition period, but Plaintiff alleges that it took on those obligations after Lockhart failed to perform. *Id.* ¶¶ 10-11. The APA also required Lockhart to make ongoing payments to Plaintiff for a 12-month period that commenced when Lockhart began manufacturing product. Dkt. 35-1 ¶¶ 1.2, 1.3, 1.4. After Lockhart failed to make payments required under the APA, Plaintiff alleges, Lockhart fraudulently transferred the Assets to defraud Plaintiff and other creditors, in violation of the TUFTA. Dkt. 35 ¶ 32-35. Plaintiff alleges that Lockhart, which was insolvent, transferred the Assets to Sinbad by personally guaranteeing a $243,000 loan from Fifth Third Bank to Sinbad so that Sinbad could cover payroll. *Id.* ¶ 34.

Plaintiff has sufficiently alleged that Lockhart conducted manufacturing and other business activities in the Texas market and purposefully directed tortious activities toward Texas. *See Ad W. Mktg., Inc. v. Hayes*, 745 F.2d 980, 982 n.3 (5th Cir. 1984) (finding exercise of personal jurisdiction proper where nonresident defendants co-owned company that manufactured goods in Texas); *see also Dontos,* 582 F. App'x at 347 (stating that nonresident defendants who engineered a transfer that knowingly impaired rights of Texas resident under agreements centered in Texas purposefully aimed their intentionally tortious conduct at the forum state). Lockhart, and its alter ego Sinbad, should have reasonably anticipated being haled into court here because their contacts with Texas are not "random, fortuitous, or attenuated." *Burger King*, 471 U.S. at 475.

### 2. Plaintiff's Cause of Action Arises from Forum-Related Contacts

Considering the second factor in the specific jurisdiction inquiry, Plaintiff's causes of action clearly arise out of or result from Sinbad and Lockhart's forum-related contacts. All of Plaintiff's allegations in this case originate from the asset sale transaction under the APA, to which Lockhart is a party. Under the APA, Plaintiff engaged in manufacturing and order fulfillment activities for Lockhart. Lockhart's alleged breach of the APA gives rise to Plaintiff's creditor interest in the Assets that Plaintiff alleges Lockhart fraudulently transferred for the benefit of Sinbad. Accordingly, there is a sufficient nexus between causes of action and contacts to support the exercise of jurisdiction. *See Clarity Rsch. & Consulting, LLC v. OmniWest LLC*, Cause No. A-17-CA-00203-SS, 2017 WL 1535235, at *5 (W.D. Tex. Apr. 26, 2017) (finding sufficient nexus between causes of action and contacts where breach of contract and tort claims arose from obligations under agreement to be partly performed in Texas).

### 3. Exercise of Personal Jurisdiction Is Fair and Reasonable

Finally, Sinbad has not established that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice. In determining whether the exercise of jurisdiction is fair and reasonable, defendants bear the burden of proof, and "it is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown." *McFadin*, 587 F.3d at 759-60. Courts consider the following five factors to determine whether the exercise of jurisdiction is fair and reasonable: (1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies. *Id.* Only one factor, the burden on Sinbad, weighs in its favor. The Court gives this factor less weight because Sinbad's alter ego, Lockhart, already is bearing the burden of litigation.

Plaintiff's interest in obtaining convenient and effective relief in Texas weighs more heavily than the burden on Sinbad.

Because Texas clearly has an interest in litigation arising from the alleged fraudulent transfer of assets relating to the sale of a Texas-based business and judicial economy is served by maintaining the action in a single forum, the Court finds that it is fair and reasonable to exercise jurisdiction over Sinbad. Accordingly, the Court's exercise of specific jurisdiction over Sinbad is proper.

## IV.   Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **GRANT** Defendant Fifth Third Bank's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 43) and **DENY** Plaintiff's request for jurisdictional discovery. The undersigned **FURTHER RECOMMENDS** that the District Court **DENY** Defendant Sinbad Foods, LLC's 12(b)(2) Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 49).

The Court **ORDERS** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Robert Pitman.

## V.   Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to

15

proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on January 29, 2021.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE